## Hempfield Township School District *v.* Cavalier (et al., Appellant).

Argued October 11, 1932.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*J. M. McCandless*, for appellant.—The interpretation placed upon the clause by defendant is fair and warranted by the definition of the word contract: Watters v. Fisher, 291 Pa. 311.

The rule of strict construction is not to be deemed to allow a liability to be predicated upon inference or strained construction: Com. v. Indemnity Co., 299 Pa. 143; Equitable Trust Co. v. Surety Co., 214 Pa. 159.

The Supreme Court has passed upon the meaning of the word contract: Greene Co. v. Twp., 305 Pa. 79.

*Ben Paul Brasley*, of *Brasley, Rubin, Balter & Cole*, for appellee.—The provision construed means one full year from and after the delivery and acceptance of the work under the contract.

A bond should be strictly construed against a compensated surety: Wheaton Coal Co. v. Harris, 288 Pa. 294.

The bond must be construed according to the apparent intention of the parties: Thommen v. Trust Co., 302 Pa. 409.

OPINION BY MR. JUSTICE MAXEY, November 28, 1932:

On July 27, 1928, the School District of Hempfield Township, Westmoreland County, entered into a written contract with Frank Cavalier, John Cavalier and James V. Cavalier, trading as Cavaliers, Contractors, for the construction of a high school. On the same day the Cavaliers, as principals, and the Commercial Casualty Insurance Co., hereinafter referred to as the insurance company, as surety, executed and delivered to the school district a completion bond and in addition thereto a contractor's bond for labor and material, pursuant to the Act of May 10, 1917, P. L. 158. On August 21, 1928, the use-plaintiffs, Jerald T. Dougherty and Michael J. Jennings, trading as Dougherty & Jennings, on the one

hand, and Cavaliers, Contractors, on the other, entered into a written contract by the terms of which Dougherty & Jennings agreed for the sum of $11,000 to do all the work in connection with the lathing and plastering of the school building. The use-plaintiffs practically completed this work, but they received only $1,500. Cavaliers were entitled to a certain credit of $239.10, leaving the balance due use-plaintiffs of $9,260.90, for which suit was brought against the Cavaliers and against the insurance company. No service was had upon the former and the case proceeded against the latter.

The defense was that by the terms of a proviso in the bond, action "could not be had" on it "after the expiration of one year from the delivery and acceptance of said contract." Defendant's contention is that "said contract" meant the contract between the school district and Cavaliers. The trial judge construed the bond to require the institution of suit thereon within one year from the date of the completion and acceptance of the work under the contract, and gave binding instructions for plaintiffs.

It is an elementary proposition that a written contract should in case of doubt be interpreted against the party who has drawn it: 6 R. C. L., page 854, section 242; White v. Smith, 33 Pa. 186. The defendant company drafted the contract in question.

As the insurance company is a corporation engaged in the business of furnishing surety bonds for a monetary consideration, the contract of surety must be construed strictly against it. See Wheaton Coal Co. v. Harris et al., 288 Pa. 294, 135 A. 637, and Fink v. Farmers' Bank of Harrisburg et al., 178 Pa. 154, 169, 35 A. 636.

In Mechanics Trust Co. v. Fidelity & Casualty Co., 304 Pa. 526, 156 A. 146, this court stated in opinion by the present Chief Justice: "We have frequently said that the trend of modern decisions, federal and state, has been to distinguish between individual and corporate suretyship, where the surety has undertaken, for money, the

contract of suretyship which it is its business to sell; in such cases, the contract should be construed most strictly in favor of the obligee."

"The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intentions of the parties, so far as that may be done without contravention of legal principles. Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent:" 13 C. J., page 521, section 482.

"In construing a written contract the words employed will be given their ordinary and popularly accepted meaning, in the absence of anything to show that they were used in a different sense. But they may be given a peculiar meaning when such intent of the parties is shown by the context in which they occur, or by admissible evidence...... Where a word has a broad and also a restricted meaning, both of which are consistent with approved usage, the question of which meaning is intended in a particular case must be determined from the context:" 13 C. J., page 531, section 489. "Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. If one construction would make it unreasonable, while another would do justice to both parties, the latter will be adopted:" 6 R. C. L., page 841, section 230. "It is an established canon of construction that in order to arrive at the intention of the parties, the contract itself

must be read in the light of the circumstances under which it was entered into. General or indefinite terms employed in the contract may be thus explained or restricted as to their meaning and application. And the contract must be so construed as to give it such effect, and none other, as the parties intended at the time it was made. This rule appears to be applicable only where the terms employed are susceptible of more than one meaning. In such case it is the duty of the court not only to regard the nature of the instrument, but also to inform itself of the circumstances which surrounded the parties at the time, so as to interpret the language employed from the standpoint which the parties occupied when they executed the contract:" 6 R. C. L., page 850, section 239.

The application of these canons of interpretation lead to the conclusion that the word "contract" in the proviso refers to the work under the contract and not to the written instrument itself. In the contractor's bond for labor and material the first "whereas-clause" reads as follows: "Whereas, the said Cavaliers, Contractors, have entered into a *written contract* with School District of Hempfield Township, Westmoreland County, the obligor, dated the 27th day of July, 1928, for *general contract work*—Hempfield Township Consolidated and Junior High School, Westmoreland County, Pa." There is no doubt as to what was referred to in the first part of that clause as "written contract." There the word "contract" was given its technical meaning, to wit, an agreement in writing which had been "entered into" on July 27, 1928. But it is to be noted that the "whereas-clause" refers not only to a *"written contract"* but also to *"general contract work."* The proviso on the interpretation of which the decision in this case depends, reads as follows: "Provided, however, that no claim shall be secured hereby and no action shall be entered or had on this obligation after the expiration of one full year from and after the delivery and acceptance of *said contract* by said

school district." The question is whether the antecedent of the phrase "said contract" was the phrase "written contract" in the whereas-clause or the phrase "general contract work," which appears a little later in the same clause. The nearest of the two antecedent subjects to which the phrase "said contract" might apply is the phrase "general contract work" and it is a rule of grammar that of two antecedent nouns to which a pronoun or some equivalent phrase may possibly refer to, the antecedent that is nearest to the pronoun or equivalent phrase is the one presumably referred to.

Additional and more substantial reasons sustaining this interpretation are:

First, at the time this bond was entered into the written contract had already been executed on the same day and it would have been a simple matter to insert in the proviso a clause that no action shall be entered or had on this obligation after the expiration of one full year from the 27th day of July, 1928, i. e., after July 27, 1929. When persons entering into an agreement know the exact date after which no action can be brought on it, it is a fair assumption that they will in the interest of clarity state that exact date in the agreement. However, at the time the bond was executed, no one knew when the work under the contract would be completed and accepted, and, therefore, it was necessary to employ such a phrase as we find in the proviso.

Second, when the act of creating a contract is to be described, it is customary to use the phrase "execution of said contract" and not the phrase "delivery and acceptance of said contract." Ordinarily men speak of the "delivery" of deeds or of materials and the "acceptance" of an "offer." An "offer" when accepted becomes a "contract." On the other hand, the word "acceptance" is also properly and customarily used in referring to work done pursuant to a contract.

Third, while the written contract was entered into the 27th day of July, 1928, work under this contract was not

completed until about April 30, 1929. If the interpretation contended for by appellant is accepted, this would mean that the use-plaintiffs had less than three months to begin action on the bond in the event that Cavaliers refused to make payment. As disputes frequently arise between contractors and those who furnish labor and material, three months is an unreasonably brief period to give to the subcontractors who furnish labor and material, for the purpose of adjusting such disputes and instituting, if necessary, an action on the bond. Furthermore, since the form of bond in this case is the standard bond used by defendants and is often used as a guarantee of the payment for labor and material entering into improvements requiring more than one year to complete, it is obvious that the interpretation contended for by the appellant is unreasonable. If in the present case the work done by the use-plaintiffs had required three months longer, then plaintiffs would have been obliged (according to appellant's interpretation) to institute suit on the bond three days before the job was completed and before the use-plaintiffs could have known whether or not the work was "accepted" and would be paid for by the primary debtor.

Fourth, the man who executed the bond as attorney in fact for the company was H. S. Hays, its assistant manager. On October 11, 1929, more than a year after the execution of the surety bond, Mr. Hays signed a letter "Pittsburgh Branch Office, H. S. Hays, Assistant Manager," and addressed it to Dougherty & Jennings, use-plaintiffs. In this letter he acknowledges the letter of Dougherty & Jennings of October 8, 1929, "advising us that the balance due you from Cavaliers amounts to $9,500," and he says: "I wish to advise that we are under the impression that this job would be accepted and the final paid on the 10th of September...... As yet Hempfield Township has not formally accepted the job. ...... Mr. Cavalier was in the office and he is becoming very impatient at the delay in accepting this con-

tract and we are both exerting our best efforts to secure the balance of moneys due Cavaliers...... We can not of course pay any moneys on this contract until the funds are received from the township so that payment may be made. We therefore ask your indulgence to that extent and we will advise you as soon as the moneys are received." In this letter Mr. Hays used the phrase "accepting contract" which is practically identical with the phrase he used in the proviso now under consideration which phrase reads, "the delivery and acceptance of said contract." The word "delivery" while not as frequently used as is the word "performance" in referring to work done under a contract, is not incorrectly used in the proviso even under the interpretation appellee contends for because the subcontractor (who is protected by the bond) had not only to perform work under the contract but also to "deliver" materials under it. Furthermore, if Hays did not interpret the now questioned phrase in the bond as the appellee contended it should be interpreted, he would not have had, after July 27, 1929, any reason to concern himself about the claim of Dougherty & Jennings. Yet, on October 11, 1929, he revealed the company's interest in the claim of Dougherty & Jennings and its eagerness to have it paid, and the "indulgence" of Dougherty & Jennings was asked for. All this indicates the defendant company's recognition, on October 11, 1929, of Dougherty & Jennings then still existing right of action against it fifteen months after the execution on July 27, 1928, of the contractor's bond for labor and materials. "Where from the terms of the contract, or the language employed, a question of doubtful construction arises, and it appears that the parties themselves have practically interpreted their contract, the courts will generally follow that practical construction:" 6 R. C. L., page 853, section 241. Mr. Hays in practically construing in his letter of October 11, 1929, the phrase "delivery and acceptance of said contract" as meaning the delivery of material and

work called for in the contract, and the acceptance of that delivery and work by the school district, gave to the word "contract" a meaning which is not at all unusual. In popular speech the word "contract" is frequently used as meaning the work done under a contract. It is not uncommon to hear some one say, "I have a big contract," or for some one to say of another, "He has a big contract." By "contract" as used in these expressions is meant a piece of work to be done pursuant to some contract. "Courts give effect to all written instruments according to the ordinary, popular meaning of the terms employed, when nothing appears to show that they were used in a different sense, and no unreasonable or absurd consequences will result from doing so:" 6 R. C. L., page 843, section 232.

There is another matter which is pertinently referred to by the court below, as follows: "At the trial, the use-plaintiffs introduced abundant testimony to the effect that the general manager of the defendant company by his conduct and actions induced the use-plaintiffs to delay the institution of suit beyond the period of one year from the execution of the written contract with the school, so that in any event the use-plaintiffs would be entitled to recover, irrespective of the limitation in the policy. 'It is true that, if negotiations for payment or satisfaction have taken place, thus inducing a delay in bringing suit within the period fixed by the policy, a recovery may nevertheless be had, since the claimant, under such circumstances, was prejudiced by the act of defendant:' Watters v. Fisher et al., 291 Pa. 311 [139 A. 842]."

However, the trial judge after deciding that the period of limitation of the action dated from the delivery of the material and the performance of the work called for by the contract and its official acceptance by the township and not from the date of the execution of the surety bond, did not submit to the jury the question as to whether or not limitation had been waived, because to

do so was then not necessary.   The decision was correct. Binding instructions for the plaintiff were proper.

The judgment is affirmed.