UNITED STATES, for Use and Benefit of WALKER et al. v. UNITED STATES FIDELITY & GUARANTY CO. et al.

No. 2295.

District Court, D. Wyoming.

Oct. 31, 1933.

Robert Murray Stewart, of Salt Lake City, Utah, for plaintiff.

Ingebretsen, Ray & Rawlins, of Salt Lake City, Utah, for defendant United States Fidelity & Guaranty Co.

Allen T. Sanford, of Salt Lake City, Utah, for defendant Campbell Building Co.

KENNEDY, District Judge.

The above-entitled cause is one in which the plaintiff seeks to recover from a surety company under a bond given to secure the fulfillment of a federal highway project in the state of Wyoming in accordance with the provisions of 40 USCA § 270. A jury was waived by the parties and the cause tried to the court. Two principal issues are raised by the pleadings: (1) As to whether the materials and services for the major amount alleged to have been furnished by the plaintiffs in the construction of the highway are within the scope of the bond; and (2) as to whether the contract was a joint adventure between the plaintiff copartnership and the principal contractor and for the fulfillment of which contract the bond was given, so as to preclude plaintiff's recovery.

Manifestly, the second issue should be examined first because, if it should be developed that this defense is sound, it makes unnecessary consideration of the first issue.

Voluminous evidence, both oral and documentary, was offered upon the trial and trial briefs have been filed. A considerable portion of the evidence was devoted to the purpose of substantiating the defense that the contract out of which plaintiff's claim arose was in fact a joint adventure with the Campbell Building Company, the contractor in this and other similar projects. The project in controversy was known as the Jackson project, because of the fact that it involved a highway being constructed adjacent to the widely known Jackson Hole, Wyo. One of the other projects was commonly known as the Banks, Idaho, and still another as the Grantsville, Utah, jobs. It seems to be generally admitted by the parties that the Banks project was a joint adventure, but there is a denial on the part of the plaintiff that the same arrangement was involved in the Jackson and Grantsville projects.

It would be impracticable in this memorandum to review all the evidence upon this phase of the controversy. There are, however, certain high spots which illuminate the general trend. The contract and bond were issued on June 13, 1931. On July 8th of the same year the plaintiff copartnership and the defendant contractor established a joint account in one of the banks of Salt Lake City to which they delivered a statement, reading: "This is a joint partnership account for the purpose of transacting business together in connection with road contracts which we have taken jointly." At practically the same time and thereafter, checks and remittances arising from the Grantsville, Banks, and Jackson contracts were deposited in this account and checked out apparently indiscriminately for the payment of services and materials which went into the performance of the several projects. Such disbursements were made upon the joint signatures of the plaintiff and the defendant contractor. Even the premium upon the particular bond which the plaintiff here invokes was paid out of this joint fund. One of the plaintiff copartners kept the books on the joint account and printed checks were secured carrying the name of both the plaintiff and the defendant as contractors. Similar joint accounts were opened and used in other banks adjacent to the places where the contracts were being performed. Checks in payment of the premiums on various proposal bonds involving

other contracts were paid out of the joint fund. One of the plaintiff copartners made complaint in regard to getting his instructions followed on account of the fact that the contract had been taken in the name of Campbell Building Company. The plaintiff and defendant contractor jointly borrowed money from the defendant surety company for the purpose of completing the Jackson project and pledged their individual securities to support such loan, upon which obligation later a joint judgment was recovered. The mass of correspondence introduced in evidence tends strongly to substantiate the theory that both plaintiff and defendant contractor were mutually interested in the success of the various projects. Under these circumstances, the claim on the part of plaintiff that no absolute written agreement was ever consummated carrying the joint adventure into definite form is unavailing when the evidence shows that, regardless of such an agreement, the admitted activities of the parties leaves the unmistakable inference that they were acting jointly and considered themselves jointly responsible for the success of the several ventures. Likewise, with all the accruing funds in one purse, it leaves the inference that the profits, if any, would be eventually marshaled and divided. We have reached the conclusion that with this strong proof there can be no other finding in the case but that the plaintiff and the defendant contractor were joint adventurers on the Jackson project.

This leaves for consideration only the principle of law which should be applied to the foregoing circumstances. It seems quite evident that the rule of law should be, that a joint adventurer under these circumstances should not be permitted to recover upon a bond given to guarantee the fulfillment of the contract of his coadventurer. The duty of the contractor to fulfill the provisions of his contract are no more imperative than those of one who is jointly interested with him in its success. The obligations are the same, to wit, to see that the contract is fulfilled in every particular before a surety should be compelled to answer for the default. As a matter of fact, the principal contractor might as well be entitled to recovery for his own default against his own surety as to permit one jointly interested with him in its success to do so. Such a rule of law would open the door to fraud of a serious type. Counsel have assured us that the books have been searched in vain for a judicial precedent and the court itself has

verified their conclusion. Perhaps the lack of precedent arises from the fact that one has never before attempted to enforce his claim upon the bond of the principal contractor who was his joint adventurer. Joint adventurers are much the same as copartners but in a limited sense. 33 C. J. 841. Under the circumstances here, it is apparent that the parties other than the surety company must be relegated to their rights for accounting in the courts of the proper jurisdiction. This conclusion makes it unnecessary to consider what elements, if any, in the plaintiff's account might have been, under other circumstances, recovered against the surety on the contract bond.

The general finding will be in favor of the defendant surety company, and a judgment may be entered accordingly dismissing plaintiff's petition, with prejudice and with costs, but without prejudice as to the Campbell Building Company, and reserving to plaintiff proper exceptions.