## Independent Bridge Company, for use, *v.* Ætna Casualty & Surety Company, Appellant.

Argued October 3, 1934.  Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edwin W. Smith,* of *Reed, Smith, Shaw & McClay,* with him *E. C. Higbee,* of *Higbee, Matthews & Lewellyn,* and *John C. Bane, Jr.,* for appellant.

*T. L. Morgan,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 26, 1934:

In April, 1925, Greene and Fayette Counties entered into a written contract with Independent Bridge Company (hereinafter called the bridge company), to build a bridge across the Monongahela River. On April 15, 1925, the bridge company sublet the work of building the approaches and substructure to H. B. Mish Company. On May 22, 1925, H. B. Mish Company and The Ætna Casualty & Surety Company, appellant, delivered to the bridge company a bond conditioned that Mish perform and complete the subcontract, and containing, inter alia, the following: "......it is hereby further stipulated and agreed that the said principal and said surety jointly and severally further covenant and agree with said Independent Bridge Company that any person or persons having a claim for any sum alleged to be due by said principal for any labor or materials furnished in or about the construction of said contract, which shall have remained unpaid for a period of sixty days after the completion and performance of the above mentioned contract and acceptance by the two counties of the work done thereunder, shall have the right to bring suit upon this obligation and to recover any sums as may be justly and legally due him or them. Such suits may be brought in the name of the Independent Bridge Company for the use of the person or persons having such claim......"

James Ainsley, the appellee, sued in the name of the bridge company for his use, to recover for certain coal sold and delivered by him to Mish, which was consumed in firing the boilers, and otherwise in and about the work. The surety denied liability. The case was tried and a verdict rendered for the use-plaintiff in the sum of $1,-891.20, with interest, or the total sum of $2,790.31. Binding instructions for defendant were refused. A rule for judgment n. o. v. was entered and later discharged, the court saying: "In the case at bar it will be noted by reference to the above recited quotations from the contract [i. e., the agreement of the *sub*-contractor to give the contractor a surety bond 'conditioned for the faithful performance of this contract in every particular and the payment for all material and labor'] and the bond [heretofore cited in this opinion] that it was the intention that the surety was to be liable to the extent of the penal sum in the bond for the execution or carrying out by the sub-contractor, H. B. Mish Company, of its said *contract*. That contract obligated it to pay for all the labor and material used by it without regard to the nature thereof and without regard to whether the material became a part of the completed structure. [The phrase of twenty-three words following the word "material" is *not* found in the contract.] What the use-plaintiff, Ainsley, furnished was just as essential to the *performance of the contract* by H. B. Mish Company, as was material remaining upon the completion of the contract a component part of the completed bridge."

The test is not whether the materials furnished were "essential to the performance of the contract." Such a test would be impracticable. Applying it, even the electric light furnished the laborers to enable them to work after dark, or the food and water supplied them during their employment would be included under the term "materials furnished." The appellate courts of Pennsylvania have clearly expressed and consistently adhered to a practicable test to be applied in suits of this character.

In Philadelphia, to use, Aplnt., v. Malone, 214 Pa. 90, 63 A. 539, it was held that where the bond was conditioned that the contractors "shall and will promptly pay all sums of money which may be due for labor and materials furnished and supplied, or performed in and about the said work," and an inspection of the contract and specifications "discloses nothing whatever which could be construed to include coal furnished for running a steam shovel or locomotive," "a subcontractor is not entitled to recover against the surety for coal furnished for generating steam to run a steam shovel and a locomotive used in excavating and removing dirt in constructing a reservoir." This court there also said : "Unless a claimant can show that the labor he performed or the materials he furnished are such as the contractors obligated themselves to furnish the city, he cannot compel payment of his claim by suit against the surety on the bond.  . . . . . . "

An inspection of the specifications in the instant case, so far as they are before us, likewise discloses nothing which can be construed to include coal furnished for any purpose. We cannot accept the reasoning of the court below that because the surety was liable to the extent of the penal sum in the bond for the execution by the subcontractor of its contract with the bridge company, and that that contract obligated it (i. e., H. B. Mish Co.) to pay for all the labor and materials used by it, and that because what Ainsley furnished was "just as essential" to the performance of the contract by the Mish Company as was the material which became a component part of the completed bridge, the surety company is liable for the coal furnished by the use-plaintiff. There was never any question of the liability of *the Mish Company* to pay for the coal furnished it. The question here is the liability of *the surety company* to pay for that coal. No such liability can be read into the bond unless the phrase "materials furnished in or about the construction of said contract" is given a meaning not heretofore judicially accepted. In Com., to use, v. Union Indemnity Co., 299 Pa.

143, 149 A. 170, it was held that the surety was not liable for gasoline furnished to operate shovels employed in the work. In Com., to use, Aplnt., v. Ætna Casualty & Surety Co., 101 Pa. Superior Ct. 314, it was held that the surety was not liable for lumber, nails, and roofing paper used by a subcontractor for the construction of forms into which concrete was poured for the erection of two bridges on a highway. In Com., to use, Aplnt., v. Empire State Surety Co., 50 Pa. Superior Ct. 404, it was declared to be "the settled rule" here and elsewhere that a surety was not liable for coal oil, tools and nails furnished in and about the construction of a highway, merely for facilitating the work, and that the words "materials furnished" apply only to such materials as enter into and become component parts of the structure. In Com., to use, Aplnt., v. Ætna Casualty & Surety Co., 309 Pa. 263, 163 A. 530, the principle underlying the cases just cited, was reiterated, though that was not the pivot of the decision.

In all these cases, though the provisions of the bond were as definite and comprehensive as in the bond now being interpreted, it was held that such provisions gave a right of action only to those who furnished to the principal on the bond material *actually incorporated in the completed job.* In Philadelphia v. Jackson & Co., Inc., 280 Pa. 319, 124 A. 446, it was held that if the materials furnished had not entered into the physical structure of the work involved, it was "sufficient if the materials are of a character contemplated by the original contract, were furnished in good faith for the purpose of incorporation into the work covered by that contract, and were suitable for the object in view." In no case arising on contracts and bonds executed, as here, prior to the Public Works Acts of 1931,* indexed on page 1621 of the Pam-

---

* The Act of June 9, 1931, P. L. 401, has no application to this case, for the contract and bond in question predated it. This act provides in section 564, at page 422, that every county shall require persons or corporations, etc., entering into a contract with it for the construction of a public work, where the amount of such contract

phlet Laws of that year (see Concrete Products Co. v. U. S. Fid. & Guar. Co., 310 Pa. 158, at 164, 165 A. 492) has an appellate court permitted, on a record the same as or substantially similar to the one now before us, such a recovery as that obtained by the use-plaintiff in the judgment herein appealed from.

The use-plaintiff's claim is not strengthened by the fact that the surety bond in this case uses the phrase, "labor or material furnished in or about the construction of said *contract*" (italics supplied), instead of the word "work" or "improvement." We cannot subscribe to the proposition that the term "contract" has any broader significance than the word "improvement." The word "contract" is often used as meaning the work or improvement for which a contract has been entered into, and the phrase "construction of said contract" is not to be taken literally, for if so this phrase would mean something akin to the interpretation of a written instrument. Blackstone defines a contract to be an agreement upon a sufficient consideration to do or not to do a particular thing. It is obvious, therefore, that the phrase "construction of said contract," as used in the bond, does not refer to *this kind* of a contract. But the word "construction" has also

---

is in excess of $500, to execute and deliver to such county, in addition to any other bond which may now or hereafter be required by law to be given in connection with such contract, an additional bond, for the use of any and every person, corporation, etc., in a sum not less than fifty per centum and not more than one hundred per centum of the contract price, conditioned for the prompt payment for all material furnished and labor supplied or performed in the prosecution of the work, *whether or not the said material or labor enter into and become component parts of the work or improvement contemplated.* (Italics supplied.) It further stipulates that every such additional bond shall provide that every person, corporation, etc., who, whether as subcontractor or otherwise, has furnished material or supplied or performed labor in the prosecution of the work as above provided, and who has not been paid therefor, may sue in assumpsit on said additional bond. See opinion written by Mr. Justice SCHAFFER in Com., to use, v. Ciccone, and Indemnity Ins. Co. of North America, Surety, 316 Pa. 111, 173 A. 642.

another meaning of equal sanction and that is, "to build, to form, or to make." "Contract" also has a *popular* meaning not sanctioned by lexicographers but recognized in the practical administration of the law. We said in Hempfield Twp. School Dist. v. Cavalier et al., 309 Pa. 460, 469, 164 A. 602: "In popular speech the word 'contract' is frequently used as meaning the work done under a contract. It is not uncommon to hear someone say, 'I have a big contract,' or for someone to say of another, 'He has a big contract.' By 'contract' as used in these expressions is meant a piece of work to be done pursuant to some contract. 'Courts give effect to all written instruments according to the ordinary popular meaning of the terms employed, when nothing appears to show that they were used in a different sense, and no unreasonable or absurd consequences will result from doing so': 6 R. C. L., page 843, section 232." The phrase "construction of said contract," as used in the bond, plainly means the building and completion of the structure provided for in the contract. As used in this bond, "contract" is synonymous with "improvement" or "work," i. e., the bridge with its approaches. In another part of the bond the phrase "construction of such improvement" is used instead of "construction of said contract," thereby indicating that in this bond the two words under discussion mean one and the same thing. The use of the term "contract" instead of "improvement" in one part of the bond has no significance whatever in enlarging the rights of the use-plaintiff in this suit.

The judgment is reversed and is here entered for the defendant.