**UNITED STATES FIDELITY & GUARANTY CO., for Use of REEDY, v. AMERICAN SURETY CO. OF NEW YORK.**

No. 3348.

District Court, M. D. Pennsylvania.

Nov. 10, 1938.

Miller Alanson Johnson, of Lewisburg, Pa., J. A. Welsh, of Shamokin, Pa., and D. M. Johnson, of Scranton, Pa., for plaintiff.

M. J. Martin, of Scranton, Pa., for defendant.

WATSON, District Judge.

Newton C. Reedy brought this action against the American Surety Company on its Labor and Materialmen Bond to recover the sum of $20,237.88, which the Use-Plaintiff expended in the construction of a Teacher's Training School at Lock Haven. During the course of the trial, by agreement of counsel, the case was withdrawn from the jury and referred to Harry Needle, Esquire, as Referee. The Referee filed a very able and complete report on June 8, 1938, finding in favor of the Plaintiff in the sum of $17,857.52. The case was then brought here for rulings upon the exceptions to the report of the Referee.

The Defendant's exceptions relate to four contentions which are elaborately discussed in its brief. They are: First, that the Plaintiff was a joint adventurer with the surety's principal; secondly, that the Plaintiff is not a materialman, and, hence, is not within the purview of the bond; thirdly, that the Plaintiff is a donee beneficiary and is not a party to the bond and is, therefore, not entitled to sue on the bond; fourthly, that the Referee erred in not finding that the evidence disclosed bad faith on the part of the use-plaintiff.

The Plaintiff alleges error in that the Referee excluded certain items as not being labor and material as those terms were used in the bond.

The facts found by the Referee are about as follows:

On November 23, 1938, John C. Snyder entered into a contract with the State Council of Education of Pennsylvania to erect a Teacher's Training School for the State Normal School at Lock Haven, Pennsylvania. Shortly after work on the building had been started, John C. Snyder failed and his surety, The United States Fidelity and Guaranty Co., undertook to finish the contract. On August 14, 1929, it entered into a contract with Thomas W. Piollet and J. M. Ayers, co-partners, trading as the Towanda Lumber Co., whereby the Towanda Lumber Co. was to complete the building in accordance with the John C. Snyder contract. Thereafter, the Towanda Lumber Co. hired Newton C. Reedy, the use-plaintiff (hereinafter called the Plaintiff), to act as superintendent of the work at Lock Haven. The Plaintiff had acted in that capacity for John C. Snyder and was familiar with the work which was to be done in connection with the contract. It was orally agreed that the Plaintiff should furnish the labor and material in accordance with the plans and specifications of the John C. Snyder contract and the Towanda Lumber Company would repay him as it received money from the United States Fidelity and Guaranty Company. For these services, the Plaintiff was to receive $75 per week and expenses and 10% of the profits made on the contract. The 10% of the profits was variously described as a bonus or in the nature of additional compensation for furnishing the labor and materials. The Plaintiff then entered into the work of constructing the building. He established an account in the Clinton Trust Company designated as being the account of the Towanda Lumber Com-

pany, N. C. Reedy, Superintendent. This account contained the personal funds of the Plaintiff and was subject to withdrawals by his signature alone. The evidence clearly shows that the Towanda Lumber Company could not draw on this account nor could the Plaintiff draw on the various accounts of the Towanda Lumber Company. The building was, in due course, completed and accepted. The Plaintiff paid a considerable portion of the expenses in connection with the work and there remains an amount of $20,237.88 which has not been repaid him by the Towanda Lumber Company. Of this amount, $17,857.59 was expended for actual labor and materials entering the building; for freight, $1,513.49; for haulage, $86.20; for electricity, $67.14; for telephone, $186.-61; for photographs, $33.35; for board and expenses, $493.50. The Towanda Lumber Company became insolvent and the Plaintiff brought this action against its surety, The American Surety Company, on its Labor and Materialmen Bond.

■ Recovery by the Plaintiff is resisted on the ground that he was a joint adventurer with the Towanda Lumber Company. As such he would not be entitled to recover from a surety as to which he is a joint principal. United States, for Use and Benefit of Walker, v. United States Fidelity & Guaranty Co., D.C., 4 F.Supp. 854. However, looking at all the facts of the case, there is a greater weight in favor of the argument that such a relationship did not exist here.

■■ Joint adventure is a concept which is of rather recent origin and as yet differs little from a partnership. 33 C.J. 841. The cases still regard it as a partnership limited in scope and duration. First Mechanics Bank of Trenton v. Com'r · of Internal Revenue, 3 Cir., 91 F.2d 275. It has been variously defined by the cases and in a majority of these the courts have retained the terminology of partnership. In Chisholm v. Gilmer, 4 Cir., 81 F.2d 120, a joint adventure is said to exist "when two or more persons combine in a joint business enterprise for their mutual benefit, with an express or implied understanding or agreement that they are to share in the profits or losses of the enterprise, and that each is to have a voice in its control and management." [page 124.] There is little disagreement with regard to the definition of a joint adventure, but in applying the definition to the facts, the cases so closely restrict their holdings to the facts of each

particular case that authorities are of little aid in determining whether or not a given relationship constitutes a joint adventure. The sharing of profits is an element to be considered but it is not controlling. Marcus v. Grant, 289 Pa. 1, 137 A. 120; First Mechanics Bank of Trenton v. Com'r of Internal Revenue, supra. Also, to give to one employed a share of the profits in lieu of, or in addition to, a stated salary does not convert an employer-employee relationship into one of joint adventure. 33 C.J. 844. However, where the person alleged to be a joint adventurer was a promoter or an original party to the undertaking the cases uniformly hold that the relationship does exist. 33 C.J. 844.

The only case which deals with a situation comparable to that of the present case is United States, for Use and Benefit of Walker, v. United States Fidelity & Guaranty Co., D.C., 4 F.Supp. 854. In that case suit was also brought against the surety of the general contractor to recover the value of labor and materials allegedly furnished by the Plaintiff to the General Contractor. However, there were additional factors evidencing an intention to engage in a joint undertaking which do not appear in the case under consideration. The Plaintiff and the general contractor, in the Walker Case, established a joint account wherein the funds of both parties were mingled and checks in payment of the project were deposited. From this joint account all payments for labor and materials were made by checks drawn indiscriminately by either of the parties. Even the premium of the bond was paid from this account. Further, the account was significantly labelled "this is a joint partnership account for the purpose of transacting business together in connection with road contracts which we have taken jointly." With this clear indication of how the parties regarded the transaction, it is not difficult to understand how the Court arrived at its conclusion that the parties were joint adventurers.

That the relationship of the parties in the present case is not that of joint adventure can be determined by examining the facts. It is true that the Plaintiff was to receive a share in the profits but this is not controlling. Even so, the share in the profits was not in the nature of an interest in the benefits of a business in which the Plaintiff was a co-owner, but was more nearly in the nature of additional compen-

sation for the supplying of labor and materials. There must be some further manifestation of an embarking upon an undertaking for joint benefit and this additional indication is not present. The Plaintiff was not a party to the most important part of the venture—when the contract was made, the terms fixed, the profit calculated, and the time and manner of performance arranged, the Plaintiff had not been associated with the Towanda Lumber Company. At the time he was employed he was not asked to be a partner or joint adventurer or any other term signifying joint control or association in the work. Instead he was requested to work for the Towanda Lumber Company in the capacity of employee. No joint account was opened as was the case in United States, for Use and Benefit of Walker, v. United States Fidelity & Guaranty Co., supra, nor were the funds of either party available to the other. There is no indication in the evidence that the parties ever contemplated a relationship other than that of employer-employee. The Plaintiff carried out all his transactions, labelled his bank account, and connected himself with the construction work as superintendent and was under the regular and frequent supervision of the Towanda Lumber Company. The payments on the contract between the United States Fidelity and Guaranty Company and the Towanda Lumber Company did not go into any account available to the Plaintiff but were sent to the Towanda Lumber Company, from whom the Plaintiff received the money to be used on the construction work. Throughout the entire transaction there is nothing to show that he was anything other than a salaried employee. It is, therefore, a necessary conclusion that the Plaintiff was not a joint adventurer with the Towanda Lumber Company.

The Defendant urges, further, that the Plaintiff does not come within the meaning of the term "materialman", as that term is used in construction bonds. The pertinent part of the bond in this case is: "* * * the condition of this obligation is such that if the said Principal shall and will promptly pay, or cause to be paid, to all persons, co-partnerships, and corporations all sums of money which may be due and payable for labor and/or material entering into or furnished, done, performed or supplied upon, in or about, or in connection with, said improvement under said contract and/or any modification thereof, then this obligation to be null and void; otherwise, to be and remain in full force and effect. * * *" The word "materialman" is defined by Bouvier as "persons who furnish materials to be used in the construction or erection of ships, houses, or buildings." 2 Bouv. Law Dict., Rawle's Third Rev., p. 2121. There is no restriction of the term to persons who are in the business of furnishing materials or have such materials in their possession as is contended by the Defendant. Furthermore, the bond itself does not limit the Defendant's liability to "materialmen" but runs to "all persons" for "all sums of money which may be due and payable for labor and materials entering into or furnished, * * *" The Plaintiff clearly comes within the scope of the language of the bond and it is not necessary to determine whether or not he is a "materialman" in the technical sense of the word. However, were such a determination necessary, I believe that the facts of the present case are sufficient to constitute the Plaintiff a materialman. His contract required him to furnish certain specified materials which he did. Since the building was of a quasi-public nature it was not subject to liens and, therefore, the bond was evidently for the protection of persons furnishing materials and, if this be true, it would be as well for the protection of the Plaintiff as those who are in the business of furnishing and maintaining a supply of such materials as are used.

Nor can the Defendant's contention that the Plaintiff was in the position of one lending money to the Towanda Lumber Company be sustained. The agreement under which the Plaintiff was employed, as found by the Referee, required him to "furnish and deliver to the Towanda Lumber Company labor and materials required to be used in the erection of the building and the aforesaid lumber company agreed to pay the said Plaintiff the current market prices for such labor and materials so furnished by the said Newton C. Reedy." This cannot be said to be an agreement to lend money, nor has the Defendant cited any authority to the contrary.

With regard to the right of a donee beneficiary to sue on a labor and materialman bond, little need be said. It has been definitely established that such a right does exist in Pennsylvania. The question was squarely raised in Commonwealth v. Great American Indemnity Company, 312 Pa. 183, 167 A. 793, and the Supreme Court of

Pennsylvania ruled that a donee beneficiary now has the right to sue.

■■ The Referee found that there was no bad faith on the part of the Plaintiff in connection with the construction project and in this the Defendant alleges error. The gist of the Defendant's allegation seems to be incorporated in his forty-seventh request for findings of fact—"Newton C. Reedy is seeking to recover in this law suit money with which to reimburse Catherine C. Snyder, John C. Snyder, the Towanda Lumber Company and himself for moneys advanced in a joint venture under an agreement between each other to share profits." The Defendant attempted to show by the testimony of an expert that the Plaintiff claimed, as his own, money which he had received from the Towanda Lumber Co. The expert based his opinion upon a comparison of the withdrawals from the accounts of the Towanda Lumber Company with deposits in the Plaintiff's account. In contradiction of this, the Plaintiff testified that he had borrowed this money from Catherine C. Snyder and this was found as a fact by the Referee. The Defendant then attempted to connect Catherine C. Snyder with the Towanda Lumber Company by showing that one of the bank accounts of the Towanda Lumber Company was opened with a signature card which contained, in addition to the names of Ayers and Piollet, the name of Catherine C. Snyder. It was further shown that the Plaintiff borrowed the money from Catherine C. Snyder without any security whatsoever. A careful search of the record fails to reveal any further evidence relating to the good faith of the Plaintiff. The most that can be said of this evidence is that it creates an inference that the claim of the Plaintiff is not being urged in good faith. The findings of a master or referee should be sustained unless he has clearly erred and his findings were based on mistake or there is absence of substantial supporting evidence. Wald v. Longacre, 3 Cir., 34 F.2d 25. The above evidence is not so convincing as to require that the finding of the Referee be set aside.

■■ There remains to be considered only the amount which should be recovered by the Plaintiff. The learned Referee excluded the following items on the ground that they were not charges "within the terms and designation of labor and materials furnished to the said building:" freight, $1,513.49; haulage, $86.20; board and expenses, $493.50; electricity, $67.14; telephone, $186.61; photographs, $33.35. In this there was error in so far as the items for freight, haulage, and board and expenses were excluded. Where a person furnishes materials and also pays the cost of transportation to the place of construction, such transportation is as essential a part of the cost of the material as is the cost of securing the goods themselves. United States, to Use of Nicola Bros. Co., v. Hegeman, 204 Pa. 438, 54 A. 344; Kansas City, to Use of Missouri Pac. R. Co., v. Southern Surety Co., 203 Mo.App. 148, 219 S.W. 727; Union Traction Co. v. Kansas Casualty & Surety Co., 112 Kan. 774, 213 P. 169, 30 A.L.R. 466. With regard to the claim for board and expenses, the Plaintiff is entitled to recover them as part of his compensation. The word "labor" includes mental as well as physical effort and a superintendent is within the scope of the meaning of "labor" as this word is used in a Labor and Materialmen Bond. Massachusetts Bonding & Insurance Co. v. Steele, Tex.Civ.App., 293 S.W. 647; Look v. City of Springfield, 292 Mass. 515, 198 N.E. 661.

■ The Referee properly excluded the claims for electricity, telephone, and photographs. The Pennsylvania Courts are very strict in enforcing the requirement that the materials must be "actually incorporated in the completed job." Independent Bridge Co. v. Aetna Casualty & Surety Co., 316 Pa. 266, 175 A. 644, 96 A.L.R. 549; Independent Bridge Co. v. Aetna Casualty & Surety Co., 318 Pa. 236, 178 A. 473. In the case last cited, the idea of recovering on a materialman bond for electric current used to enable laborers to work at night was ridiculed. In Com. v. Union Indemnity Co., 299 Pa. 143, 149 A. 170, the Court refused to allow a claim for gasoline used in operating a shovel engaged in the work. Therefore, although part of the electricity was used to operate a painting machine, this item cannot be allowed. As for the items for telephone and photographs, it is clear that they neither entered into the building nor became a part thereof.

Now, this 10th day of November, 1938, the order of the Referee is amended in accordance with the foregoing opinion, and judgment is directed to be entered in favor of the Plaintiff and against the Defendant in the sum of $19,950.71, with interest from the first day of January, 1931.