J. ROLAND BRADY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. ROLAND BRADY AND MARIAN E. BRADY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41058, 41059.    Filed December 30, 1955.

*Robert G. MacAlister, Esq.*, for the petitioners.
*James A. Anderson, Esq.*, for the respondent.

OPINION.

PIERCE, *Judge:* Respondent contends, as to the first issue, that petitioner's one-fourth share of the profits here involved was derived from a joint venture for the purchase of the 68 improved residential lots, the removal of the large liens therefrom, and the sale of said lots to customers in the ordinary course of the business of the joint venture; and that such profits are taxable as ordinary income. Petitioner contends, on the other hand, that such profits are taxable as capital gains from sales of property held primarily for investment. We agree with the respondent.

Section 3797 (a) (2) of the Internal Revenue Code of 1939 provides in part, as follows:

The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; * * *

It is generally recognized that a joint venture exists where two or more persons combine in a joint enterprise for their mutual benefit, with an express or implied understanding or agreement that they are to share in the profits or losses of the enterprise and each is to have a voice in the control or management. *United States Fidelity & Guaranty Co.* v. *American Security Co.*, (M. D., Pa.) 25 F. Supp. 280. One of the characteristics of a joint venture is that it usually is formed to handle a single transaction, rather than to carry on a continuing business. *West* v. *Peoples First National Bank & Trust Co.*, 378 Pa. 275. Where members of such a venture acquire property, improve its marketability when necessary, and then hold it for sale to customers in the ordinary course of the business of such venture, the profits are taxable

as ordinary income rather than as capital gains. Cf. *George J. Wibbelsman*, 12 T. C. 1022; *Morris W. Zack*, 25 T. C. 676.

In the instant case, petitioner and his associates joined together to purchase heavily encumbered real estate, to enhance its marketability by removing the liens, and to sell lots for profit to builders or other persons who they believed would become buyers after the title had been cleared. Petitioner was financially unable to handle the project alone, so he arranged with three experienced real estate men to join with him. The necessary capital was contributed by the four associates, in equal shares. The understanding among them was that profits, losses, and expenses would be shared equally; and that all would have equal control in fixing the prices for which the properties were sold. Title was placed in an outside party, so that a mortgage might be arranged without extending the liabilities of the associates, and so that deeds could be executed without obtaining the signatures of the associates and their wives. It is true that no partnership returns were filed; but the profits were computed on a joint basis, and then divided into separate shares. It is immaterial that the petitioner had other employment, for it is well recognized that one may engage in two or more businesses. *C. E. Mauldin*, 16 T. C. 698, affd. 195 F. 2d 714. We hold that petitioner and his associates were members of a joint venture and that the acts of each are attributable to all. *Morris W. Zack*, *supra*.

We are impelled to conclude also that the 68 lots were acquired with a view to producing profits on a quick turnover, as soon as the obstructing liens could be removed, and that they were not acquired for investment purposes. The lots were not income producing, and none of the associates intended either to use them personally or to build upon them. Also, until buildings were constructed, there could be no reasonable expectation of any substantial appreciation in value, for the lots had already been fully improved with streets, paving, curbs, sewers, and utilities, and an active market for improved lots of such character had existed for several years. It is significant, too, that the financing of the project was placed on a short-term basis, notwithstanding that petitioner and Christo had only limited funds available.

The settlement of the large delinquent tax liens aggregating from $350,000 to $400,000, which exceeded the market value of the properties, and also the arrangements for the mortgage, judgment bond, demand note, and indemnifying agreement with Christo, which were all used in the financing of such settlement, were in themselves major development activities. Steps of such character, to improve marketability of title, may be fully as important as improvement of the land itself through subdivision, grading, or street installations; and they involve similar use of skill, capital, and business activity. Here, most of the contributed capital was expended in the title-clearing process.

The lots were sold promptly, after the encumbrances were removed; and all of them were sold. The first sale was made within 2 months after the properties were acquired; 27 of the lots were sold within the first year; all but 4 of the 68 were sold within approximately 16 months; and even the last 4 had been placed under option prior to the expiration of such 16-month period.

It is true that petitioner and his associates had no common office and did not publicly advertise the lots; but these were not necessary. Slocum and Lawler had their own offices and did their own advertising without reference to particular lots. Also, all four of the associates had been engaged in various phases of the general real estate business for many years; and they knew the builders and other persons who were potential customers. Advertising is merely a means for finding customers; and where an active market exists and potential customers are known, the employment of conventional methods of advertising may not be essential. Moreover, we cannot overlook that in the case of the Pardini sale, there are definite indications that the buyer was solicited and that considerable pressure was brought to bear.

It is our opinion that the lots never were held passively; to the contrary, there was a definite, continuing, and active plan to acquire, disencumber, and hold them primarily for sale to customers in the ordinary course of the business of the joint venture. We hold that they were not capital assets and that petitioner's one-fourth share of the profits from their sale is taxable as ordinary income.

The second issue involves a question as to what if any allowances should be made to petitioner, in computing his one-fourth share of the net profits realized by him and his associates in 1947 and 1948, for real estate taxes paid on the lots held by them in those years. No allowance for such taxes was made in the notices of deficiency.

The petitioner testified that his group paid such taxes in the amounts of $2,097.20 for 1947 and $375.34 for 1948. The respondent agreed, on brief, that petitioner is entitled to allowances for his share of the real estate taxes paid by the group; but he suggested the possibility that counter-adjustments may not have been made for prorations of taxes in connection with sales of lots, and invited petitioner to make any concessions in this regard which seemed proper. No such concessions have been made.

We hold that, in computing petitioner's share of the net profits derived by him and his associates for the years involved, allowances should be made to him for one-fourth of the real estate taxes paid by the group in the aggregate amounts of $2,097.20 for 1947 and $375.34 for 1948.

*Decisions will be entered under Rule 50.*