Eastern Electric Sales Co., Inc., Appellant, *v.*
Provident Tradesmens Bank and
Trust Company.

Argued May 27, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Nochem S. Winnet,* with him *Charles M. Solomon,* and *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Robert L. Trescher,* with him *Thomas N. O'Neill, Jr.,* and *C. Brewster Rhoads,* for Joseph Resnick, appellee.

*Francis J. Carey, Jr.,* for Provident Tradesmens Bank & Trust Company and Young and Company, appellees.

Opinion by Mr. Justice Cohen, June 29, 1960:

Appellant, Eastern Electric Sales Co., Inc. (Eastern), brought this action in equity to obtain specific performance of an alleged oral agreement between Eastern and the appellee Provident Tradesmens Bank & Trust Company (Provident) for the sale of certain real estate located in Philadelphia, and to rescind and cancel a subsequent written agreement between Provident and L. Resnick & Sons (Resnick), also an appellee, for the same property.

The relevant findings by the chancellor are as follows: On the morning of December 5, 1958, Stephen McLaughlin, a duly authorized Vice-President of Provident, orally informed Eastern's real estate broker and representative, Joseph J. and Reynold H. Greenberg, Inc., that on behalf of Provident he would receive offers in the form of sealed bids for the purchase of the property in question by 2:30 p.m. on that day from Resnick and Eastern; that these bids would be considered by Provident; that the minimum terms of the bid had to be cash of $150,000, the balance, a mortgage bearing 5% interest payable within ten years to be amortized at 5% annually. He hoped it would be possible to agree on the terms of the transaction that afternoon with the highest bidder, and that a formal written agreement of sale embodying all the terms of the transaction would be entered into after the basic terms had been settled. McLaughlin also commented that the consummation of the transaction would be subject to the execution of a formal written agreement of sale and that the parties would not be bound until such written agreement was executed. At the appointed time, Resnick, through his agent, submitted a bid in accordance with the requested terms in the amount of $351,000. At the same time, Eastern, through its agents, Reynold H. Greenberg, Jr., and Nathan Teitelman, the latter a

member of the Philadelphia Bar, submitted the following letter as its bid:

"Dear Mr. McLaughlin:

"In accordance with the agreement reached this morning when you said that you would have sealed bids to be opened at 2:30 today and that the highest bidder would forthwith be given an Agreement of Sale pursuant to the terms of the bid, please be advised that we, acting in cooperation with Nathan Teitelman, Esq., now submit the following bid for the purchase of the above property in behalf of our client.

"Purchase Price to be $356,661.00. A $10,000.00 check, which has previously been given to Albert J. Grosser Company, is to be used as a deposit; $140,-000.00 cash additional to be paid at the time of settlement, and the balance ($206,661.00) in the form of a Purchase Money First Mortgage payable within 10 years, bearing interest at the rate of 5% and amortization of 5% annually.

"It is understood, of course, that title to the premises will be free and clear of all easements, encumbrances and restrictions, and such as will be insured by any reputable title insurance company at regular rates.

"Taxes, water rent, and rent, if any, to be adjusted at the time of settlement.

"Settlement to be made within 90 days from the time a formal Agreement of Sale has been prepared and mutually agreed upon.

"The foregoing is the bid being submitted by our client and it is our understanding that when final settlement is consummated one-half of the usual real estate broker's commission will be paid to Nathan Teitelman, Esq. with whom we are cooperating, and there will be no further fee due Joseph J. and Reynold H. Greenberg, Inc. in this transaction."

Eastern's agents knew that Provident was already bound to give its exclusive real estate agent, Albert J. Grosser Co., the usual 5% commission, and that Albert J. Grosser Co. had an understanding with the real estate agent for Resnick that the usual real estate broker's commission of 5% would be shared equally by them if the Resnick bid were the higher of the two and accepted by Provident. Eastern's agents also knew that the Albert J. Grosser Co. would not divide the 5% commission with them. Accordingly, when McLaughlin (about 2:30 p.m. on December 5, 1958), read the last paragraph of Eastern's letter he interpreted it as requiring the bank to pay a 2½% commission to Nathan Teitelman, and inasmuch as Provident was already bound to pay 5% to Albert J. Grosser Co., McLaughlin concluded that Eastern's bid required a payment of 7½% in real estate commissions and was therefore not the higher bid. Immediately after this reading, Eastern's representatives left McLaughlin's office, returned momentarily and offered to cross out that paragraph of the bid referring to the real estate broker's commission. McLaughlin refused to accept this elimination, and submitted the matter to Provident's counsel for an opinion as to who was the highest bidder. After receiving a legal opinion with respect thereto, McLaughlin declared that Resnick was the highest bidder and Provident subsequently entered into a formal agreement of sale with Resnick for the price of $351,000.

Eastern maintains that the statements of McLaughlin, on the morning of December 5, constituted an offer to sell the real estate in question to the person who submitted the highest bid to him by 2:30 that afternoon, and that its bid of $356,661 was clearly the higher of the two, so that Eastern was legally the purchaser of the property. The letter itself, Eastern contends, makes it clear that the final paragraph was a matter separate

and apart from the bid set out in the first portion of the letter and in no way alters its legal effect.

Assuming for the purposes of this appeal that what transpired in the morning amounted to an offer by Provident to sell the property to the highest bidder by 2:30, see *Jenkins Towel Service Co., Inc. v. Fidelity-Philadelphia Trust Co.*, 400 Pa. 98, 161 A. 2d 334 (1960), no contract resulted between Provident and Eastern. The final paragraph of the letter cannot be lightly dismissed as Eastern would have us do, because of the opening phrase "The foreging is the bid being submitted by our client. . . ." In view of the fact that Eastern's agents knew that Provident only intended to pay 5% commission, and that Provident's agent, Albert J. Grosser Co., would not split the brokerage fee with Eastern's agents, the interjection of the statement that it was Eastern's agents' understanding that at settlement a commission of one-half the usual real estate broker's commission would be paid to Teitelman created a serious ambiguity in the alleged acceptance submitted by Eastern. Just as in *Jenkins*, supra, where we interpreted an ambiguous offer against the offeror, so must we interpret an ambiguous acceptance against the acceptee.

There are two possible interpretations which can reasonably be placed upon the final paragraph of the letter when it is considered in light of Eastern's agents' knowledge of the no-split arrangement. It could well have been an attempt, as Provident's agents interpreted the letter, to impose upon Provident liability for an extra 2½% commission. Under this interpretation, Resnick's bid at 2:30 p.m. would have been the higher of the two. On the other hand, Eastern might have been seeking to force Provident to split its regular 5% commission between Teitelman and Albert J. Grosser Co., contrary to the present understanding that the

commission was exclusively that of Albert J. Grosser Co. This qualification amounts to a condition not called for by the terms of the alleged offer as couched in the morning conversation. The inclusion of this extra condition renders the letter not an acceptance but a counter offer, see Restatement, Contracts §60 (1932). This counter offer was never accepted by Provident either before or after the attempted withdrawal of the final paragraph by Eastern's agents. Accordingly, under either interpretation, no contract resulted between Eastern and Provident.

Our disposition of this matter obviates the necessity of discussing the applicability of the Statute of Frauds.

Decree affirmed.

Mr. Justice BENJAMIN R. JONES concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I believe that the majority has taken a mole hill and built it into a mountain. The Greenberg letter of December 5, 1958 was specific, direct, and unambiguous. It submitted a bid of $356,661 in as straightforward language as can be found in business correspondence. After the amount of the bid and the manner of payment with all relating conditions were precisely spelled out, the letter definitively and categorically, without exception or modification, said: "The foregoing is the bid being submitted by our client."

When that bid was accepted by Provident, the contract became binding on both parties. The addition of the clause that one-half of the usual real estate broker's commission was to be paid to Nathan Teitelman was mere surplusage. The *usual* real estate broker's commission was understood by all parties to be 5%.

I do not see how the Majority arrives at the conclusion that Provident interpreted the letter to mean it would have to pay a 7½% commission. This is weaving theory out of speculation and guesswork. It absolutely contradicts the understanding of what constitutes the *usual* real estate broker's commission.

In any event, the discussion on the broker's commission cannot alter the fact that an offer was made and accepted, and a contract was born. Professor Williston in his monumental work on Contracts, says, Vol. 1, 257-259: "Somtimes an acceptor from abundance of caution inserts a condition in his acceptance which merely expresses what would be implied in fact or in law from the offer. As such a condition involves no qualification of the acceptor's assent to the terms of the offer, a contract is not precluded. Thus an offer to sell land may be accepted subject to the condition that the title is good, for unless the offer expressly specifies that the offeree must take his chance as to the validity of the title, the meaning of the offer is that a good title will be conveyed. So where the defendant by letter offered to sell land, a reply which requested the defendant to send the abstract and stated that the plaintiff would close the matter was effective as an acceptance . . .

"A further distinction has been suggested in regard to added terms in an acceptance. It has been held that *if an accceptance in positive terms is made, the addition of a demand for some performance to which the acceptor would not be entitled under a proper interpretation of the agreement will not invalidate the acceptance and prevent the formation of a contract.*" (Emphasis supplied.)

I would reverse the lower court and order specific performance of the contract.