Archbishop *v.* Karlak et al., Appellants.

536

Argued September 28, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Paul Matzko*, with him *Erskine, Wolfson, Matzko & Pierson*, for appellants.

*Joseph N. Bongiovanni, Jr.*, with him *S. Jay Sklar*, and *Speese and Kephart*, for appellee.

OPINION BY MR. JUSTICE EAGEN, January 19, 1973:

This appeal is from a final decree of the Court of Common Pleas of Northumberland County.

Appellants are a group of former officers of Sts. Peter and Paul Greek Catholic Church, Mount Carmel. Appellee is Ambrose Senyshyn, Archbishop of Philadelphia Metropolitan of the Ukrainian Catholics of the Byzantine Rite in the United States, who instituted this action in equity for the purposes of restraining appellants from interfering with the operation of the church and of obtaining an accounting of certain church money allegedly held by them.

No purpose is served by recounting the history of congregational strife which has bitterly divided the members of this church. What is important to the pres-

ent appeal is the manner in which this dispute was resolved by the lower court.

At the end of the formal testimony the chancellor invited counsel to file briefs delineating their respective positions. At that juncture the crucial issue was whether or not the Mount Carmel Church was a uniate church under Archbishop Senyshyn's ecclesiastical jurisdiction.

The former counsel for appellants filed a "brief" containing, inter alia, the following curiously phrased admission: "We cannot deny that the defendants belong to the Diocese of the plaintiff (based upon the testimony of the plaintiff)." The brief went on to concede that defendants could be restrained from taking collections, serving as officers or interfering with church operations, but denied that the court could adjudicate adversely to them in the church cemetery dispute or could prohibit meetings of the parish called in the absence of the pastor.

On April 14, 1971, the chancellor handed down a decree nisi ordering appellants to account for all church money and other property in their possession, enjoining them from interfering with parish property (including the cemetery) or in other church affairs, and restraining them from acting as church officers unless designated to do so by the Archbishop.

Undisputably the form of this decree was not in accordance with Pa. R. C. P. 1517 which directs that such an adjudication shall consist of a summary of the issues raised in the pleadings, specified findings of fact and conclusions of law and a discussion of the factual and legal questions involved, all of which are necessary to establish an adequate record on appeal. This decree did contain, however, the usual provisions for filing exceptions within twenty (20) days which was thereafter done by appellants.

Prior to the hearing of exceptions before the court en banc on November 17, 1971, counsel for both parties stipulated that Hon. Frank MOSER could sit alone as the court en banc.[1]

In its opinion the court en banc, adverting to appellants' brief, said its effect was to admit the church was a uniate church. The court then stated that the parties had chosen to settle this litigation by consent decree and concluded the chancellor was therefore not bound to file an adjudication according to the form prescribed by Pa. R. C. P. 1517.

Appellants assert that this proceeding was not resolved by consent decree and hence the issues raised should have been determined by the court in accordance with conventional procedures. For the reasons set forth below we agree and accordingly remand this case with directions.

It is strenuously urged that the submitted brief could not be construed to serve as the basis of an agreement to a consent decree since its final two points (regarding the cemetery and church meetings called in the absence of the pastor) were expressly rejected by the court and opposite conclusions were embodied in the decree.[2] Alternatively, it is asserted that appel-

---

[1] The only other judge of the Northumberland court had disqualified himself from participating in the case.

The stipulation also provided that the court en banc would file "a formal adjudication as set forth in the Pennsylvania Rule of Civil Procedure 1517 at the time he files an opinion relating to the exceptions filed in this matter and argument had this day." One of appellants' exceptions to the decree nisi had concerned itself with the chancellor's earlier failure to file a procedurally correct adjudication.

[2] In its opinion the court en banc explained that after these last two matters were discussed and negated at argument "[t]he attorneys for the plaintiff then offered a form of decree prepared by them, which, with one exception *proved acceptable to the Court and all counsel.*"

lants' counsel had no authority to enter into a consent decree.

We do not impugn the lower court's statement that the lawyers agreed to a consent decree, but we must question the efficacy of such an agreement for there is nothing in the record to indicate that the eight appellants knew of or consented to such a disposition. The vital question is one of agency; could the attorney bind them by his action without their knowledge or consent. We conclude he could not.

The scope of an attorney's authority is an issue which divides the various jurisdictions. 7 Am. Jur. 2d Attorneys at Law, §128 observes: "Although some cases have held that the control an attorney has over the conduct of a case impliedly authorizes him to bind his client by a confession of or consent to a judgment, other decisions maintain the view that *an attorney has no authority to enter a consent decree,* or confess judgment without the client's direction, knowledge or consent, and if a consent judgment or decree is entered against the protest of the client or contrary to his instructions not to compromise, the judgment or decree will not be binding on him." [Emphasis supplied.]

Our Courts have traditionally followed this latter approach. In this Commonwealth the litigant is the complete master of his own cause of action in matters of substance; he may press it to the very end regardless of the facts and law arrayed against him.

Thus, in *McLaughlin v. Monaghan,* 290 Pa. 74, 138 A. 79 (1927), a question was raised concerning the effect of a purported release given by McLaughlin's attorney to an alleged joint tortfeasor. This Court wrote at page 78: "An attorney as such cannot release a client's cause of action . . ., or surrender his substantial rights in whole or in part . . ., or compromise or settle his client's litigation, without special authority so to do (Mackey v. Adair et al., 99 Pa. 143; Stokely

v. Robinson, 34 Pa. 315; Township of North Whitehall v. Keller, 100 Pa. 105; Luzerne Ass'n v. Savings Bank, 142 Pa. 121). . . ." In *Starling, Exr. v. West Erie Avenue Building and Loan Association,* 333 Pa. 124, 3 A. 2d 387 (1939), it was claimed the attorney for appellee agreed that his client would pay the taxes on a certain piece of real property of which it was the foreclosing second mortgagee if the first mortgagee would refrain from bidding at the sheriff's sale, thus avoiding increased costs. No bid was made but the taxes were never paid. The defense was lack of authority to enter into the arrangement. In an assumpsit action the trial judge found for plaintiff but the court en banc entered judgment for the defendant n.o.v. This Court affirmed, saying at pages 126-27: "There is no contention that the attorney had express authority from his client to bind it to this agreement and appellee denies any such authority. We have only then to consider whether an attorney has either implied or apparent authority to so act. While the authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to its accomplishment (Restatement, Law of Agency, section 35), and while an attorney, by virtue of his office, may have broader powers than the ordinary agent to bind his clients by admissions and acts in the course of suit or in the management of the regular course of litigation [citations omitted], such apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him [citations omitted]. He cannot, without express authority . . . settle litigation: McLaughlin v. Monaghan, 290 Pa. 74; Lipschutz v. Lipschutz, 124 Pa. Superior Ct. 380, 386. The necessity of special authority set forth in these cases, not only denies the existence of implied authority, but also of apparent author-

ity of an attorney to bind his client to such obligations by virtue of his office."[3] The instant record discloses no such ratification. See also, Standard Pennsylvania Practice, Vol. 1, Chap. 2, §214: "Generally, an attorney of record has implied authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial which are necessary or incidental to the management of the suit, and which affect only the procedure or remedy, as distinguished from the cause of action itself."

The very nature of a consent decree requires the understanding of or ratification by the respective parties.[4] The instant record fails to establish either.

---

[3] See and cf., *Lipschutz v. Lipschutz*, 124 Pa. Superior Ct. 380, 188 A. 556 (1936), which was an assumpsit action to recover rent due under an oral agreement. The parties had earlier been involved in similar litigation which ended when their respective counsel entered into an agreement of settlement and stipulated in open court and had transcribed into the notes of testimony that "a monthly lease be entered into dated January 1, 1934 to pay to the plaintiff the sum of $25.00 monthly." A claim was made in the second action that the attorneys had no authority to enter into such a compromise. Writing for the court, Judge BALDRIDGE said: "We concede that an attorney's general authority in the conduct of a suit is confined to those matters which arise in the regular course of the litigation and does not extend to a compromise of the action. This lease, therefore, did not bind the parties without the express authority of the clients. It was made, however, in open court, apparently in the presence and within the hearing of the clients, as it was placed upon the record of the case originally instituted." 124 Pa. Superior Ct. at 386.

[4] "A consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties—a contract binding the parties thereto. . . ." *Universal Builders Supply, Inc. v. Shaler Highlands Corporation*, 405 Pa. 259, 265, 175 A. 2d 58 (1961). As a contract such a decree requires a mutual understanding of and concerted action by the parties [see, 2 ALR 2d 514, 516 (1948)] and a court has neither the power nor authority to modify or vary the terms set forth, in the absence of fraud, accident or mistake. See, *Jones Memorial Baptist Church v. Brackeen*, 416 Pa. 599, 207 A. 2d 861 (1965).

Appellee compares this case with those instances where an appeals court of this Commonwealth was faced with a technically inadequate decree but nonetheless adjudicated the matter with finality because undisputed facts led to only one conclusion. *Vollet v. Pechenik*, 380 Pa. 342, 110 A. 2d 221 (1955), is cited as an example. There this Court said at page 349: "The chancellor should have prepared formal findings of fact and conclusions of law in compliance with Rule 1517. . . . We do not see, however, what could be gained by our remanding the case for that purpose." The cases offer no pertinent instruction because our concern ultimately is not with technical requirements but rather with a decree of no binding force.

The decree is vacated and the record remanded to the court below with directions to the court en banc to prepare a final decree in conformity with Pa. R. C. P. 1517. Each side to pay own costs.

Mr. Justice ROBERTS, Mr. Justice POMEROY and Mr. Justice NIX concur in the result.