Maryhelen DALY, Personal Representative of the Estate of Harry J. Daly, a/k/a Harry John Daly, Deceased,

v.

John I. BRIGHT, Jr., et al.

Civ. A. No. 71–1412.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Dec. 19, 1975.

Henry B. FitzPatrick, Jr., Philadelphia, Pa., for plaintiff.

Raymond M. Seidel, Norristown, Pa., for defendants.

## OPINION

DITTER, District Judge.

The question presented in this suit is whether, as plaintiff contends, the entire amount of a certain note is due, or whether, as defendants assert, there was an agreement to settle for a considerably lesser sum.[1] The case was tried to the court sitting without a jury, and this opinion will constitute my findings of fact and conclusions of law required by Rule 52(a).

Plaintiff's decedent, Harry J. Daly, an attorney, owned the controlling share of a company which operated a Maryland radio station. Sometime prior to 1969, Daly entered into an agreement to sell his interest to Towson Radio, Inc., a corporation then

---

1. In a previous opinion and order, I dismissed this action with respect to the senior creditor on the disputed note and his surety. See *Daly v. Bright*, 345 F.Supp. 11 (E.D.Pa.1972). On March 13, 1975, I granted partial summary judgment to the plaintiff in the amount of $15,-000., plus costs of suit and interest, the sum for which defendants contend that they compromised the note.

being formed by the defendants, Bright, Eisenhart, Hamilton, and Paisley. Part of the purchase price was obtained by a loan from Fidelity Bank to Towson, while an additional $200,000. was paid to Daly in the form of a note. This note, which was subordinated to the Fidelity's claim for its loan to Towson, was personally guaranteed by the four defendants. Towson defaulted on its various obligations and eventually was sold to Sudbrink, after which sale insufficient assets remained for Towson to pay the note to Daly. This suit was then instituted against the four guarantors.

At trial, Alexander N. Rubin, Jr., Esquire, testified that beginning in 1969, he represented the defendants, participating in some, although not all, of the negotiations which finally culminated in the sale to Sudbrink. Notwithstanding the objections of some of Rubin's clients, whose interests and investments would be wiped out by the sale, it was regarded as the best possible way out of a hopeless financial situation, and ultimately it was consummated.

In the course of representing the defendants, Rubin negotiated with Norman E. Burke, Esquire,[2] who represented the decedent, Harry J. Daly. In view of Fidelity's superior lien on Towson's assets, Daly favored the sale since it represented his only hope of realizing anything substantial from the interest which he once held.

On March 16, 1970, Rubin proposed to Burke a settlement of Daly's note on the following basis:

1. he would cause the four defendants, who were officers and directors of Towson, to approve the sale to Sudbrink;

2. the four defendants would induce their friends and relatives, who were stockholders in Towson, to approve the sale;

3. the four defendants would cause a guarantee to be executed to Daly on his note from Towson; and

4. the four defendants would pay a total of $15,000. in cash, which would be trans-

mitted to Daly when the Sudbrink sale had been concluded.

Burke later advised Rubin that this offer was satisfactory and acceptable.

To substantiate this agreement, defendants introduced a letter dated March 18, 1970, from Burke to Rubin, which stated:

This will confirm our telephone conversation of Monday, March 16th, during which I told you that after the conditions set forth by the bank are met, my client will agree to accept the sum of $15,000. in cash in exchange for an absolute release of the four individual note signers. As I understand it, this money will not be forthcoming until the Sudbrink matter is closed to the purchaser's satisfaction. However, my client has again raised the point that since the four individuals have never paid him anything, he is not entirely convinced that they will pay him the $15,000. when due. I would hope that we can work out some kind of an arrangement to guarantee this payment once the other conditions of the Sudbrink arrangement have been met.

Rubin obtained $15,000. from the defendants, placed it in his attorney account, and apprised Burke of the fact that the money was in his possession. Daly died on August 19, 1970, but sale to Sudbrink was concluded in late October or November of that year. On December 22, 1970, Rubin tendered the $15,000. to Burke, but Daly's personal representative rejected the sum.

Defendants concede that their only defense to the note is the settlement described by Rubin. Plaintiff contends, however, that even if defendants are given the benefit of all reasonable inferences arising from the evidence, the requirements for a valid settlement have not been established. I agree.

██ Without questioning in any way the accuracy of Mr. Rubin's testimony, it is apparent that there was no proof of Burke's authority to negotiate a settlement for

---

2. Burke's whereabouts are apparently unknown and thus the parties were unable to have him appear as a witness at trial.

Daly. Under Pennsylvania law, which the parties agree is controlling, the litigant is the complete master of his own cause of action in matters of substance. See *Archbishop v. Karlak*, 450 Pa. 535, 539, 299 A.2d 294, 296 (1973); see also *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616, 629 (Roberts, J., dissenting), cert. denied, 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974). Unless there is express authority, an attorney may not settle litigation. *International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.*, 456 Pa. 436, 318 A.2d 918 (1974); *Archbishop v. Karlak*, supra, 450 Pa. at 540, 299 A.2d at 297. A lawyer may not bind his client on the basis of either implied or apparent authority. See id. at 541; 299 A.2d at 297; *Starling v. West Erie Avenue Building and Loan Association*, 333 Pa. 124, 126, 3 A.2d 387, 388 (1939).[3]

■ The letter from Burke to Rubin fails to supply the missing authority or even refer to an unconditional acceptance on Daly's part. In effect, the proposition made by Rubin to Burke constituted an offer. Burke's letter to Rubin does not say that Daly accepted that offer; rather, it states that it may be accepted *in the future* and seeks additional safeguards.[4]

In rebuttal, plaintiff introduced into evidence a letter from Daly to Burke dated March 25, 1970, a portion of which said:

Jack Bright called and advised that a meeting had been held Monday in which the stockholders of Towson Radio, Inc. had apparently approved the Sudbrink offer. I did not receive a copy of that agreement, I have not yet received the letter from the Fidelity Bank in Philadelphia of its willingness to pay $50,000.00 or ⅚ of the amount eventually coming to me out of the Sudbrink sale, I have not received anything in writing on the $15,-000.00 to be paid by Bill Hamilton and others, nor how it will be paid, nor how it will be secured, nor have I found out, yet, whether the individual endorsers on the Towson note to me have assets which might make it worth our while to either up their offer or bring action.

This letter shows that Daly had not accepted Rubin's offer for settlement. To the contrary, Daly speaks in the terms of trying to get the defendants to raise their offer or suggests that alternative of bringing suit against them. This language is hardly that which an attorney would use in communicating with his attorney if the matter had been settled.

Even without Daly's letter to Burke, it is plain from Burke's letter to Rubin that as of that moment Daly had not agreed to Rubin's proposal, and there was no other evidence to show that Daly ever assented to Rubin's proposal.

■ I conclude that plaintiff's decedent never authorized his attorney to assent to Rubin's offer.[5] There was no compromise of the note during Daly's lifetime nor by his personal representative subsequent to his death, and his estate remains entitled to its

---

**3.** See also *McLaughlin v. Monaghan*, 290 Pa. 74, 78, 138 A. 79, 80 (1927); *Lipschutz v. Lipschutz*, 124 Pa.Super. 380, 386, 188 A. 556, 558 (1936).

**4.** A reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance, but it is a counter-offer.
Restatement, Contracts § 60 (1932); see *Hedden v. Lupinsky*, 405 Pa. 609, 612, 176 A.2d 406 (1962); *Eastern Electric Sales Co., Inc. v. Provident Tradesmens Bank & Trust Co.*, 400 Pa. 429, 435, 162 A.2d 215 (1960).

**5.** In view of my disposition of this matter, it is unnecessary to decide whether, had Daly authorized Burke to accept Rubin's offer, defendants would be able to avail themselves of the defense of accord and satisfaction. I note with some interest, however, that since defendants never paid Daly the $15,000., the accord seems not to have been executed, see *Hosler v. Hursh*, 151 Pa. 415, 422, 25 A. 52 (1892); *Duryea v. Long*, 191 Pa.Super. 511, 515, 159 A.2d 259 (1960), nor did they show a good faith dispute concerning the amount actually due Daly or consideration flowing to him in return for accepting a lesser amount, both of which elements appear necessary for a valid accord and satisfaction, see *Hayden v. Caddington*, 169 Pa. Super. 174, 177, 82 A.2d 285 (1951).

face amount. Judgment will be entered in favor of the plaintiff and against the defendants accordingly.