******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RESTAURANT SUPPLY, LLC *v.* GIARDI
LIMITED PARTNERSHIP
(SC 20154)

Robinson, C. J., and Palmer, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 42a-2-328 [3]), a sale of goods by auction is with
reserve unless the goods are in explicit terms put up without reserve,
and, in an auction without reserve, after the auctioneer calls for bids,
the article cannot be withdrawn unless no bid is made within a reason-
able time.

The plaintiff, R Co., brought an action seeking, inter alia, specific perfor-
mance of an alleged agreement to purchase certain real property in
Hartford owned by the defendant G Co. R Co.'s complaint alleged that,
after G Co. had received multiple offers for its property, it requested
that all prospective buyers submit their highest and best offers. R Co.
further claimed that it had submitted the highest and best offer but that
G Co. did not accept that offer and, instead, accepted a purportedly
lower offer submitted by H Co. While R Co.'s action was pending, G
Co. executed a special warranty deed conveying the property to H Co.
R Co. thereafter added H Co. as a defendant and amended its complaint,
adding a second count against H Co. G Co. and H Co. thereafter each
moved to strike the count of the amended complaint directed at them,
which R Co. opposed. R Co. claimed that, by alleging that G Co. had
requested that buyers submit their highest and best offers, it had suffi-
ciently pleaded the existence of an auction without reserve, which con-
tractually bound G Co. to accept the bid submitted by R Co., the highest
bidder, and created an enforceable agreement that was an exception to
the requirement of the statute of frauds that there be a writing signed
by the party to be charged in order for it to be enforceable. The trial
court granted the motions to strike, concluding that the statute of frauds
barred R Co.'s claim and rejecting R Co.'s argument that G Co.'s request
for the highest and best offers constituted an auction without reserve.
*Held* that the trial court properly granted the motions to strike filed by
G Co. and H Co., R Co. having failed to plead in its amended complaint
that its offer either complied with the statute of frauds or fell within
an exception thereto; R Co. acknowledged that it failed to plead that
G Co. explicitly stated that it was selling its property in an auction
without reserve, R Co.'s amended compliant failed to mention the words
"auction" or "bid," or to describe or attach the document or communica-
tion constituting the auction or bid, and, even if this court were to
assume that R Co.'s amended complaint sufficiently alleged an auction,
R Co.'s allegation that G Co. used the phrase "highest and best" offers,
without more, did not indicate that G Co. intended to be bound by the
highest and best offer, and, therefore, R Co.'s allegation was insufficient
to plead an auction without reserve.

Argued November 5, 2018—officially released February 12, 2019

*Procedural History*

Action for, inter alia, specific performance of an
alleged agreement to purchase certain of the named
defendant's real property, and for other relief, brought
to the Superior Court in the judicial district of Hartford,
where the court, *Noble, J.*, granted the plaintiff's motion
to add Hartford Auto Park, LLC, as a defendant; there-
after, the plaintiff filed an amended complaint; subse-
quently, the court, *Noble, J.*, granted the defendants'
motions to strike and rendered judgment thereon, from
which the plaintiff appealed. *Affirmed.*

*Kerry M. Wisser*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellant (plaintiff).

*Johanna S. Katz*, with whom was *Richard C. Robinson*, for the appellee (named defendant).

*John F. Conway*, with whom was *James E. Ringold*, for the appellee (defendant Hartford Auto Park, LLC).

*Opinion*

KAHN, J. The present appeal requires us to consider whether a plaintiff has sufficiently pleaded that a transaction was an auction without reserve by simply alleging that the owner of the real property for sale sought highest and best offers from potential buyers and the plaintiff submitted the highest and best offer, and, if so, whether an auction without reserve for the sale of real property creates an enforceable agreement constituting an exception to the statute of frauds. The plaintiff, Restaurant Supply, LLC, appeals[1] from the trial court's judgment rendered after it had granted motions to strike by the defendants, Giardi Limited Partnership (Giardi) and Hartford Auto Park, LLC (Hartford Auto Park). The court determined that the plaintiff failed to allege that Giardi's request that potential buyers of its property, 19 and 43 West Service Road, Hartford (property), submit their highest and best offers constituted an auction without reserve and, thus, created an exception to the requirement under the statute of frauds that there be a "writing . . . signed by the party . . . to be charged . . . ."[2] General Statutes § 52-550 (a). The parties disagree as to whether the plaintiff's allegation that Giardi's request for " '[h]ighest and [b]est' offers" constitutes "explicit terms" that Giardi was putting the property up for auction without reserve for purposes of General Statutes § 42a-2-328 (3).[3] We conclude that, under the facts of this case, the plaintiff's allegations are insufficient to allege an auction without reserve, and, as such, we do not resolve the issue of whether an exception to the statute of frauds should be created for auctions without reserve.

The amended complaint alleges the following facts. Giardi sought to sell its property at an original listing price of $450,000. In response to this listing, the plaintiff offered to buy the property for $425,000, with no contingencies, by providing Giardi with a purchase agreement and a $50,000 deposit check. In response to this and other offers, Giardi directed all prospective buyers to resubmit their highest and best offers. In response to Giardi's request, the plaintiff submitted a cash offer of $460,000, with no contingencies, by providing a purchase agreement signed by the plaintiff and redirecting the prior $50,000 deposit check, which it claims was the highest and best offer. Giardi did not accept that offer, however, and instead accepted a purportedly lower offer presented by Hartford Auto Park.

In December, 2016, the plaintiff filed a one count complaint, seeking an order requiring Giardi, which at that time still owned the property, to convey title to the property to the plaintiff. The plaintiff claimed that, by requesting highest and best offers, Giardi was bound to accept the highest offer and, therefore, entered into an enforceable contract with the plaintiff for the sale of the property.[4] The plaintiff also requested an injunction,

restraining Giardi from "conveying, encumbering or in any manner disposing of the [p]roperty." In addition, the plaintiff recorded a lis pendens on the land records, notifying interested parties of the pending action.

Despite the plaintiff's actions, in March, 2017, Giardi sold the property to Hartford Auto Park and executed a special warranty deed, which conveyed the property subject to the lis pendens, and Hartford Auto Park recorded the deed. Thereafter, the plaintiff amended its complaint, adding Hartford Auto Park as a defendant and asserting a second count against it.

In response, Hartford Auto Park moved to strike count two of the amended complaint pursuant to Practice Book § 10-39, contending that the statute of frauds barred the plaintiff's claim because the purchase agreement given to Giardi by the plaintiff was not signed by the party to be charged, namely, Giardi. The plaintiff opposed the motion, claiming that, by alleging that Giardi requested "[h]ighest and [b]est offers," it sufficiently pleaded the existence of an auction without reserve, which contractually binds the seller to the highest bidder and, therefore, according to the plaintiff, does not require a writing signed by the party to be charged in order to be enforceable.[5]

The trial court granted Hartford Auto Park's motion to strike, concluding that the statute of frauds barred the plaintiff's claim, and rendered judgment on count two in favor of Hartford Auto Park.[6] In its memorandum of decision, the trial court rejected the plaintiff's argument that Giardi's request for highest and best offers constituted an auction without reserve and, as such, created an exception to the requirement that it produce a writing signed by the party to be charged, and noted that none of the cases cited by the plaintiff provided persuasive authority because they did take into consideration the statute of frauds.[7] Thereafter, Giardi moved to strike count one of the amended complaint. Applying the same rationale it had used in ruling on Hartford Auto Park's motion, the trial court granted Giardi's motion and rendered judgment in its favor. This appeal followed.

In resolving whether the trial court properly granted the motions to strike filed by Hartford Auto Park and Giardi, we begin with the general principles that guide our review of a trial court's decision to grant a motion to strike. "A motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court. As a result, our review of the [trial] court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . .Thus, we assume the truth of both the spe-

cific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly . . . rather than narrowly." (Internal quotation marks omitted.) *Giacalone* v. *Housing Authority*, 306 Conn. 399, 403–404, 51 A.3d 352 (2012). It is well settled, however, that "[t]he failure to include a necessary allegation in a complaint precludes a recovery by the plaintiff under that complaint . . . ." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 130, 2 A.3d 859 (2010).

The issue of whether the plaintiff's allegation that Giardi's request for " '[h]ighest and [b]est' offers" constitutes "explicit terms" that Giardi was putting the property up for auction without reserve[8] for purposes of § 42a-2-328 presents a question of statutory interpretation, over which we exercise plenary review, guided by well established principles regarding legislative intent. See, e.g., *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013) (explaining plain meaning rule under General Statutes § 1-2z and setting forth process for ascertaining legislative intent). We begin with the statutory language. Our sale by auction statute, § 42a-2-328, which our legislature adopted verbatim from § 2-328 of the Uniform Commercial Code, provides that an auction can be held "with reserve" or "without reserve." Section 42a-2-328 (3) provides that "*a sale is with reserve* unless the goods are in *explicit terms* put up without reserve." (Emphasis added.) A comment to § 42a-2-328 explains that the drafters intended the language to "make it clear" that "[a]n auction 'with reserve' is the normal procedure. . . . The prior announcement of the nature of the auction . . . as . . . without reserve will, however, enter as an 'explicit term' in the 'putting up' of the goods and conduct thereafter must be governed accordingly. . . ." Conn. Gen. Stat. Ann. § 42a-2-328 (West 2009), comment (2).

In the present case, the plaintiff acknowledges that it failed to plead that Giardi explicitly stated that it was selling its property in an auction "without reserve" but asks this court to hold that its allegation that Giardi requested " '[h]ighest and [b]est' offers" was sufficient to plead an auction without reserve. Although this court has never resolved whether the phrase "highest and best" constitutes "explicit terms" sufficient to create an auction without reserve, "precedents from other jurisdictions are helpful in construing [uniform] act[s]." *Cain* v. *Moore*, 182 Conn. 470, 473, 438 A.2d 723 (1980), cert. denied, 454 U.S. 844, 102 S. Ct. 157, 70 L. Ed. 2d 129 (1981). Other jurisdictions that have adopted identical language to § 42a-2-328 have held that "[t]he statement that the sale [will] be made to the highest bidder is not the equivalent of an announcement that the auction [will] be without reserve." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Holdco Asset Management, L.P.*, 729 Fed. Appx. 124, 126 (2d Cir.

2018); id., 125 (applying New York's sale by auction statute that contains language identical to § 42a-2-328); see also, e.g., *Sly* v. *First National Bank of Scottsboro*, 387 So. 2d 198, 200 (Ala. 1980) (applying identical language and concluding that seller's use of phrase " 'highest, best and last bidder' " did not transform auction into auction without reserve).

The plaintiff in the present case alleged merely that Giardi *requested* " '[h]ighest and [b]est' offers," not that Giardi indicated that it intended to be *bound* by the highest and best offer.[9] Moreover, the plaintiff's amended complaint failed to mention the words "auction" or "bid," or even to describe or attach the document or communication constituting the auction or bid, calling into question whether the plaintiff sufficiently alleged that Giardi's request for offers constituted an auction at all. Even if we assume, arguendo, that the amended complaint sufficiently alleged an auction, we conclude that the plaintiff's allegation that Giardi used the phrase " '[h]ighest and [b]est' offers," without more, is insufficient to plead an auction without reserve. Consequently, because the plaintiff failed to plead compliance with or any exception to the statute of frauds, we conclude that the trial court properly granted the motions to strike filed by Hartford Auto Park and Giardi.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] The plaintiff was aggrieved by the decision of the trial court to strike its amended complaint and, as such, has standing to bring this appeal. See General Statutes § 52-263 (party that is "aggrieved" by final judgment of trial court may bring appeal).

[3] Giardi and Hartford Auto Park initially contend that § 42a-2-328, which adopted § 2-328 of the Uniform Commercial Code (UCC), applies only to the sale of goods and not to the sale of real estate. Although this court has not decided that issue, we have held that "precedents from other jurisdictions are helpful in construing [uniform] act[s]." *Cain* v. *Moore*, 182 Conn. 470, 473, 438 A.2d 723 (1980), cert. denied, 454 U.S. 844, 102 S. Ct. 157, 70 L. Ed. 2d 129 (1981). We observe that other jurisdictions have applied § 2-328 of the UCC to the sale of real estate. See, e.g., *Forbes* v. *Wells Beach Casino, Inc.*, 307 A.2d 210, 219 (Me. 1973) ("we consider the principle announced by [§ 2-328 (4) of the UCC] eminently applicable to protect the rights of the highest good-faith bidder in a sale of real estate"). Even if we were to agree that that section of the UCC was applicable to the sale of real estate, however, both defendants argue that the plaintiff in the present case failed to allege that Giardi used "explicit terms" to put the property up without reserve, under either § 42a-2-328 or § 2-328 of the UCC.

[4] Although not averred in the complaint or in the amended complaint, the plaintiff argued in its opposition to Hartford Auto Park's motion to strike that, by requesting highest and best offers, Giardi offered to sell the property to the highest bidder, transforming the plaintiff's offer into an acceptance and creating an enforceable agreement.

[5] Specifically, the plaintiff argued that an auction without reserve constitutes an exception to the writing requirement under the statute of frauds, because the plaintiff's purportedly highest and best offer created an acceptance and the plaintiff's delivery of a purchase agreement constituted partial performance of their agreement, which "is an essential element of the estoppel exception to the statute of frauds." *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 63, 873 A.2d 929 (2005).

[6] The plaintiff failed to file a new pleading against Hartford Auto Park

within the fifteen day period required under Practice Book § 10-44, which provides in relevant part: "[When] the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint . . . ." The plaintiff additionally claims that the trial court's grant of the motions to strike by Hartford Auto Park and Giardi prevented it from developing "a full factual record" that would have helped this court "fully [address] the circumstances under which an agreement may be created by a without reserve auction." Hartford Auto Park challenges the plaintiff's preservation of this claim on the ground that the plaintiff did not raise this issue at the trial court. Notwithstanding that challenge, we observe that the plaintiff had an opportunity to expand the factual record through amending its complaint.

[7] We observe that, in one of the cases cited by the plaintiff in its opposition to Hartford Auto Park's motion to strike, *Pyles* v. *Goller*, 109 Md. App. 71, 674 A.2d 35 (1996), the court did address the issue of whether, even though there was no written agreement between the parties to satisfy the statute of frauds, a seller still may be ordered to specifically perform on a sale conducted in an auction without reserve. Id., 88. As we explain in footnote 9 of this opinion, however, *Pyles* is distinguishable from the present case because the plaintiff in that case sufficiently pleaded the existence of an auction without reserve. Id., 80, 83.

[8] General Statutes § 42a-2-328 (3) provides in relevant part: "In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale. In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time. In either case a bidder may retract his bid until the auctioneer's announcement of completion of the sale, but a bidder's retraction does not revive any previous bid."

[9] This point distinguishes the present case from the cases and secondary sources on which the plaintiff relies. For example, in *Jenkins Towel Service, Inc.* v. *Fidelity-Philadelphia Trust Co.*, 400 Pa. 98, 101, 161 A.2d 334 (1960), the seller's letter at issue specifically stated that " 'an [a]greement of [s]ale [*would be*] *tendered to* the highest acceptable bidder' . . . ." (Emphasis added.) See also, e.g., *Forbes* v. *Wells Beach Casino, Inc.*, 307 A.2d 210, 216 (Me. 1973) ("contract provide[d] that the highest qualified cash offer '*shall be accepted*' " [emphasis altered]); *Pyles* v. *Goller*, 109 Md. App. 71, 77, 674 A.2d 35 (1996) (lots sold in auction in which " 'high bidder wins the right to choose a lot' "); *Short* v. *Sun Newspapers, Inc.*, 300 N.W.2d 781, 784 (Minn. 1980) (letter stated that " '[t]he newspapers *will be sold . . . to the highest bidder*' " [emphasis added]); 1 Restatement (Second), Contracts § 28, illustration (3) p. 81 (1981) ("I offer my farm Blackacre for sale to the highest cash bidder *and undertake to make conveyance to the person submitting the highest bid* received" [emphasis added]).