NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-1301

———————

SERVIS ONE INC, d/b/a BSI Financial Services, Inc.; BSI FINANCIAL HOLDINGS, INC.;
ENTRA SOLUTIONS PVT LTD; GAGAN SHARMA,
Appellants

v.

OKS GROUP LLC; OKS GROUP INTERNATIONAL PVT LTD; VINIT KHANNA

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:20-cv-04661)
District Judge:  Honorable Mark A. Kearney

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 10, 2024

———————

Before:  BIBAS, CHUNG, and ROTH, Circuit Judges

(Filed March 7, 2025)

———————

OPINION[1]

———————

CHUNG, Circuit Judge.

This case turns on whether lawyers had their client's express authorization to enter

---

[1] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

into a settlement agreement. The District Court found that they did not, and because this finding is not clearly erroneous, we will affirm.

I.    BACKGROUND[2]

Servis One, Inc., d/b/a BSI Financial Services, Inc. ("BSI") hired OKS Group, LLC ("OKS") to provide data entry support in India. When BSI ended the relationship, OKS responded by accusing BSI of misappropriating trade secrets and breaching their contract. OKS brought its claims against BSI via three actions: (1) an arbitration proceeding in Philadelphia, (2) a civil action in India, and (3) a criminal complaint in India. In connection with these actions, OKS hired U.S. attorneys from Duane Morris LLP. OKS also hired Indian attorney Aditya Wadhwa to assist in the criminal action.

In July 2018, the night before arbitration was to begin, the parties seemingly agreed to a settlement in principle. The settlement would have resolved all three actions. However, Wadhwa advised OKS's CEO and lawyers from Duane Morris that OKS could not withdraw or settle the Indian criminal action without running afoul of Indian law and suggested that OKS "handle the Indian disputes independently." JA1341. Accordingly, the parties never signed the agreement.

Attempting to enforce the July 2018 settlement in principle, BSI sued OKS in the United States District Court for the Eastern District of Pennsylvania in August 2019. In response to that action, OKS argued that though the parties had reached a settlement in

---

[2]    Because we write for the parties, we recite only facts pertinent to our decision. While BSI challenges several of the District Court's findings of fact, we rely here only upon uncontested factual findings or facts drawn directly from the record.

principle, they had both operated under a mutual mistake of law concerning OKS's ability to withdraw the Indian criminal action.

Meanwhile, the parties continued to try to reach a settlement. Attempts at settlement intensified beginning in December 2019 and continuing through March 10, 2020. During that time, the attorneys for the parties negotiated through a series of emails and phone calls. The negotiations primarily focused on how the settlement agreement would address the Indian criminal proceeding. Throughout this period, the Duane Morris attorneys continued to communicate with OKS through its CEO and their discussions likewise focused on addressing the Indian criminal action, as well as other OKS demands.

The Duane Morris attorneys and OKS's CEO scheduled a call for March 10, 2020, to discuss the settlement agreement and the CEO's concerns relating to the Indian criminal proceedings. Despite concerns about potentially "jump[ing] the gun," less than two hours before the call with their client, a Duane Morris attorney authorized BSI's attorney to sign and file a letter notifying the Court that the parties had agreed to a settlement. JA642–43. Believing the case was settled, the Court dismissed the case with prejudice.

OKS's CEO continued to communicate with the Duane Morris attorneys, expressing concerns with the settlement, particularly with respect to the Indian criminal action, and requesting changes to it. Unbeknownst to OKS, these requests were futile because the case had already been dismissed. OKS's CEO was not made aware of the dismissal until months later.

3

BSI filed this action in the Eastern District of Pennsylvania to enforce the alleged new 2020 settlement agreement. The Court held a bench trial and heard testimony from BSI's attorney, OKS's CEO, and two Duane Morris attorneys. The Court found that "OKS had not authorized a settlement as of Friday, March 6, 2020," JA13 (FOF 56), nor did OKS authorize the Duane Morris attorneys to agree to the March 10 settlement.

BSI timely appealed. BSI argues that a settlement agreement was formed between BSI and OKS on either February 20 or March 4 of 2020. Thus, BSI challenges the District Court's finding that "OKS had not authorized a settlement as of Friday, March 6, 2020." JA13 (FOF 56).

II.    DISCUSSION[3]

This background belies a relatively simple factual issue: did the Duane Morris attorneys have express authorization from OKS to enter into the purported settlement agreement? The District Court concluded that the answer was "no," and because this was not clear error, we will affirm.

Under Pennsylvania law,[4] a lawyer can bind a client to a settlement agreement only if the client has expressly authorized the lawyer to do so. Reutzel v. Douglas, 870 A.2d 787, 789–90 (Pa. 2005). The scope of an agency relationship, including the presence of express authority, is a question of fact. Volunteer Fire Co. of New Buffalo v.

---

[3]    The District Court had jurisdiction under 28 U.S.C. § 1332(a)(3). We have jurisdiction under 28 U.S.C. § 1291.

[4]    We apply state law to determine the scope of an attorney's authority to enter into a settlement agreement. Tiernan v. Devoe, 923 F.2d 1024, 1032–33 (3d Cir. 1991). Both parties assume that Pennsylvania law applies, and we agree.

4

Hilltop Oil Co., 602 A.2d 1348, 1351–52 (Pa. Super. Ct. 1992); see Gillian v. Consol. Foods Corp., 227 A.2d 858, 861 (Pa. 1967); King v. Driscoll, 296 A.3d 1178, 1185 (Pa. Super. Ct. 2023). Therefore, we review the District Court's finding that the Duane Morris attorneys lacked express authority for clear error. United States v. U.S. Sugar Corp., 73 F.4th 197, 203 (3d Cir. 2023). A finding is clearly erroneous when we are "left with the definite and firm conviction that a mistake has been committed." United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Scully v. US WATS, Inc., 238 F.3d 497, 506 (3d Cir. 2001) (internal quotation marks omitted).

First, BSI argues that on February 20, 2020, the parties entered into an oral settlement agreement with express authority from OKS. The Duane Morris attorneys do not dispute that they called attorneys for BSI and orally agreed to terms offered by BSI.[5] These attorneys did so after they explained newly proposed terms of the settlement to the CEO of OKS and he "responded by saying something like 'that's fine.'" JA8 (FOF 35.b). Wadhwa was not on the call. According to BSI, this utterance was a grant of

---

[5]     Apart from any issue of express authority, the parties dispute whether the February 20 oral agreement was an enforceable final settlement. OKS also contends that BSI cannot raise its argument that an enforceable agreement was reached on February 20 because it failed to make that argument in the District Court. Because we hold that the District Court did not clearly err in finding that the Duane Morris attorneys were not authorized to enter into a final settlement agreement on February 20, we need not determine whether the February 20 phone call would have constituted a final settlement agreement or if BSI can even raise this argument.

express authority to settle.

In Pennsylvania, express authority "must be the result of explicit instructions regarding settlement." Tiernan, 923 F.2d at 1033 (citing Senyshyn v. Karlak, 299 A.2d 294, 297 (Pa. 1973)). We cannot conclude that the District Court clearly erred in finding that "something like 'that's fine'" fell short of this standard. JA8 (FOF 35.b). In the context of the record of prolonged negotiations, "that's fine" may have signaled approval of one or more specific proposed changes[6] discussed on the call, yet fallen short of providing "explicit instructions regarding settlement," especially when considering the consistent concerns voiced by OKS and Wadha that the Indian criminal matter be kept separate from the settlement. While the District Court could have found that "that's fine" was express approval, it did not and its finding is a permissible view of the evidence that is, therefore, not clearly erroneous. See Scully, 238 F.3d at 506.[7]

Turning to March 4, 2020, the analysis is much the same. BSI claims that the Duane Morris attorneys entered into a written settlement agreement via a series of emails

---

[6] These proposed changes included deleting a clause regarding the criminal case and adding a clause permitting BSI to terminate the settlement if police in India prosecuted BSI.

[7] We do not consider two arguments forfeited by BSI. One argument is forfeited because BSI did not raise it below (arguing that Duane Morris attorneys' reasonable belief they received express authorization to settle itself established express authority) and the other is forfeited because it was raised for the first time in BSI's reply brief (arguing that OKS ratified settlement by not repudiating emails from the Duane Morris attorneys stating that the parties were "in conceptual agreement" and had "verbally acceded in principle," BSI Reply Br. 9 n.6 (internal quotation marks omitted)). Doe v. Mercy Cath. Med. Ctr., 850 F.3d 545, 558 (3d Cir. 2017) (arguments not raised in the District Court); Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 204 n.29 (3d Cir. 1990) (arguments raised for the first time in a reply brief).

6

on March 3 and 4 of 2024. BSI argues that this agreement was expressly authorized because, on March 2, 2020, the Duane Morris attorneys told the CEO of OKS that they would "respond to BSI's counsel, advising that we are amenable to the settlement agreement as drafted, with the exception of a request for clarification." BSI Op. Br. 33 (quoting JA12 (FOF 48)). The CEO responded by stating "Keep it simple," cutting and pasting the Duane Morris attorneys' language explaining their proposed course of action, and then writing "OK." Id. (quoting JA12 (FOF 49)).

Again, we perceive no clear error in the District Court's choice between two permissible views of the CEO's email; namely that it fell short of the required "explicit instructions regarding settlement." Tiernan, 923 F.2d at 1033 (citing Senyshyn, 299 A.2d at 297). Like the statement on February 20, this language could be read to signal approval of a specific proposed change, rather than explicitly approving a final settlement. This is especially apparent when examining the immediately preceding emails between OKS's CEO and the Duane Morris lawyers, which reveal persistent disagreement and concerns by OKS regarding the impact of the settlement on the Indian criminal action.

The same can be said regarding BSI's argument that OKS ratified the agreement when OKS's CEO responded to a Duane Morris email containing the Duane Morris attorneys' counteroffer to BSI with the words "Understood" and "Works." BSI Op. Br. 34 (quoting JA1614). Again, "Understood" and "Works" do not render the District

7

Court's choice between two permissible findings clearly erroneous.[8]

III.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[8]    BSI also argues that the District Court clearly erred in describing the terms of the settlement agreement proposed at various times.  BSI Op. Br. 42–47.  Even assuming such errors were made, they do not affect our conclusion that the District Court did not clearly err in determining that OKS did not expressly authorize the Duane Morris attorneys to settle the case.  In other words, any error was harmless because "it is highly probable that the error did not affect the outcome of the case."  Brennan v. Norton, 350 F.3d 399, 416 (3d Cir. 2003) (internal quotation marks omitted).